IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH EUGENE MANDER, III,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-0773 |
| | : | |
| **CENTRAL INTELLIGENCE AGENCY,** | : | |
|     **Defendant.** | : | |

**MEMORANDUM**

**PEREZ, J.**                                                                                                    **May 10, 2024**

      Plaintiff Joseph Eugene Mander, III, filed this civil action against the Central Intelligence Agency ("CIA") seeking damages for harm that he and his father allegedly suffered due to his father's participation in the CIA's "MK Ultra" program. Mander seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Mander leave to proceed *in forma pauperis* and dismiss his Complaint.

    **I.**    **FACTUAL ALLEGATIONS**[1]

      Mander alleges that his father "was a pilot and a psychologist for United States Air Force and was highly involved in 'MK Ultra' for over twelve years" including the years between 1966 and 1976. (SAC at 3-4.)[2] The Supreme Court has described MKUltra as follows:

---

[1] "[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). In other words, "the most recently filed amended complaint becomes the operative pleading." *Id.* This means that in determining whether Mander has stated a claim, the Court considers only the allegations in his governing complaint. *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) ("[L]iberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings."). Accordingly, Mander's Second Amended Complaint ("SAC"), (ECF No. 7), which is his most recently-filed pleading, governs his claims. In any event, the gist of his pleadings is essentially the same.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

> Between 1953 and 1966, the Central Intelligence Agency financed a wide-ranging project, code-named MKULTRA, concerned with "the research and development of chemical, biological, and radiological materials capable of employment in clandestine operations to control human behavior." The program consisted of some 149 subprojects which the Agency contracted out to various universities, research foundations, and similar institutions. At least 80 institutions and 185 private researchers participated. Because the Agency funded MKULTRA indirectly, many of the participating individuals were unaware that they were dealing with the Agency.
>
> MKULTRA was established to counter perceived Soviet and Chinese advances in brainwashing and interrogation techniques. Over the years the program included various medical and psychological experiments, some of which led to untoward results. These aspects of MKULTRA surfaced publicly during the 1970's and became the subject of executive and congressional investigations.

*C.I.A. v. Sims*, 471 U.S. 159, 161-62 (1985) (footnotes omitted).

Mander alleges that, as part of the MK Ultra project, the C.I.A. injected his father with Lysergic Acid Diethylamide ("LSD"), which caused his father to suffer from mental health issues including "severe paranoia, panic attacks, and psychosis along with violence," that, among other things, compromised the safety of the rest of the family, including Mander. (SAC at 2.) Mander also alleges that he was mentally and emotionally affected by these drugs, because they "were present in his [father's] system [at] the time of [Mander's] conception," and caused "a long term genetic effect" that has made it difficult for Mander to function in society. (*Id.*) Mander also suffers from mood swings, anger issues, and mental instability that he attributes to his father's participation in the MK Ultra program. (*Id.*)

Mander brings constitutional claims based on the above allegations. (*Id.*) He seeks to bring a "class action suit" on behalf of "everyone whose family was involved in 'MK Ultra' and those children who were born with physical or mental disabilities due to the drugs administered to their parents involved in MK Ultra." (*Id.* at 3.) He also seeks $12 million in damages. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Mander leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Mander is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. Claims on Behalf of Others

Any claims that Mander asserts on behalf of his father or other similarly-situated individuals cannot proceed.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own

---

[3] Because Mander is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))). Although an individual may represent himself *pro se*, a person who is not a licensed and admitted attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). This principle also precludes litigants who are not attorneys from representing others by way of a class action. *See Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) (noting that "*pro se* litigants are generally not appropriate as class representatives."); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (*per curiam*) ("Lewis, who is proceeding *pro se,* may not represent a putative class of prisoners."). Accordingly, any claims raised by Mander on behalf of individuals other than himself will be dismissed.

B.  **Mander's Claims**

Mander also asserts constitutional claims on behalf of himself. Presumably, Mander brings these claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971).[4] However, *Bivens* claims must be brought against individual

---

[4] *Bivens* provides a judicially recognized damages remedy for constitutional violations committed by federal actors in their individual capacities in limited circumstances. *Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Since *Bivens* was decided in 1971, the United States Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the

defendants, rather than a government agency such as the CIA.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Ynfante v. United States*, No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("[A] *Bivens* claim can only be asserted against individual officials.").  Regardless, the Supreme Court has rejected the existence of a *Bivens* claim in this exact circumstance.  In *United States v. Stanley*, the Supreme Court rejected a master sergeant's claim for damages based on injuries he sustained when he was secretly administered LSD as part of an Army program, holding "that no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'"  483 U.S. 669, 684 (1987) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)).  That decision was based in part on a prior Supreme Court decision, which similarly held that the Federal Tort Claims Act does not waive the United States's sovereign immunity for injuries to servicemembers that arise out of their service.[5]  *See*

---

Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses."  *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017).  The Court has recognized an implied private action against federal officials in only three cases:  (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment.  *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 137 S. Ct. at 1855 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself.").  "To preserve the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . . [because] [t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies."  *Dongarra*, 27 F.4th at 180; *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

[5] Following *Feres*, "[i]n 1956, Congress enacted the Military Claims Act ('MCA'), which allowed the Secretary of Defense to settle administrative claims brought against the United States for noncombat property damage or personal injury caused by members of the military or

*Feres*, 340 U.S. at 146; *Matreale v. N.J. Dep't of Mil. & Veterans Affs.*, 487 F.3d 150, 153 (3d Cir. 2007) ("Without exception, in other post-*Feres* cases, the Court has adhered to the compelling necessity of maintaining military discipline as the basis for expanding the intra-military immunity doctrine to encompass a variety of claims, against an assortment of defendants, brought by a range of servicemen, for injuries arising out of, or in the course of activity incident to, military service."). Since Mander's harm is derivative of his father's, which was sustained in connection with his service in the Air Force, Mander cannot state a plausible *Bivens* claim for relief based on the facts alleged. *See Hinkie v. United States*, 715 F.2d 96, 98 (3d Cir. 1983) (holding that claims of wife and children of servicemember, who alleged harm as a result of servicemember's exposure to radioactive material while on active duty, "are also barred under the *Feres* doctrine"); *see also Ortiz v. U.S. ex rel. Evans Army Cmty. Hosp.*, 786 F.3d 817, 824 (10th Cir. 2015) (explaining that if "the civilian injury has its origin in an incident-to-service injury to a service member" then it is barred by *Feres*).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mander leave to proceed *in forma pauperis*, and dismiss his Complaint. Leave to amend will not be given as any attempt to amend would be futile. An appropriate order follows, which dismisses this case.

BY THE COURT:

_____
**HON. MIA R. PEREZ**

---

civilian employees of the Department of Defense 'acting within the scope of [their] employment.'" *Lee v. U.S. Dep't of the Navy*, No. 23-CV-0576, 2024 WL 535880, at *2 (S.D. Cal. Feb. 9, 2024) (quoting 10 U.S.C. § 2733a) (alterations in original). "[T]he Secretary's decision regarding an administrative claim brought under the MCA [is] 'final' and not subject to judicial review." *Id.* (quoting 10 U.S.C. § 2735).